# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA KOTTKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 8849 |
| v. ) | |
| ) | Judge William T. Hart |
| PETSMART, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Cynthia Kottke ("Kottke") brings this action under the Americans with Disabilities Act as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq.* against her former employer, Defendant PetSmart, Inc. ("PetSmart"). This case is now before the court on the parties' cross-motions for summary judgment.

Kottke began working for PetSmart in April 2006. In January 2008, Kottke began working as a Fish Healthcare Associate at PetSmart's distribution center in Ottawa, Illinois ("Distribution Center"). On June 21, 2013, Kottke injured her back while squatting down to service one of the fish tanks. She left work after her injury and went to OSF Medical Group to be evaluated by a doctor. Kottke was treated by Dr. Sampat On June 21, 2013, and treated on subsequent occasions. Kottke eventually submitted Family Medical Leave Act ("FMLA") paperwork to PetSmart and was given FMLA leave effective June 21, 2013. Kottke then returned to the OSF Medical Group, where she was treated by Dr. Robert Maguire and his Family Nurse Practitioner Kayla Simons ("CNP Simons").

In mid-August 2013, PetSmart provided Kottke with ADA paperwork since she was about to exhaust her FMLA leave in late August. On August 28, 2013, PetSmart received the ADA paperwork ("ADA Paperwork") prepared by CNP Simons. In the ADA Paperwork, CNP Simons indicated that Kottke had certain work restrictions and could work with a certain accommodation.[1] After Kottke's FMLA leave expired, PetSmart gave Kottke a leave of absence while it reviewed her ADA Paperwork. On September 11, 2013, Kottke returned to see Dr. Maguire for an appointment. At that appointment Dr. Maguire gave Kottke a letter (September 11 Letter) indicating new physical restrictions and indicating that it was unlikely that Kottke's condition would improve. That same day, Kottke emailed the September 11 Letter to Jennifer Wier ("Wier") in Human Resources. On September 12, 2013, PetSmart terminated Kottke's employment.

Kottke argues the ADA Paperwork indicated that she was able to perform her job with a reasonable accommodation and that PetSmart violated the ADA by discriminating against her based on her disability and by failing to accommodate her disability. PetSmart argues that Kottke was not a qualified individual with a disability who was protected under the ADA and that Kottke's employment was not terminated because of her disability.

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[1] Specifically, in the ADA Paperwork, CNP Simons indicted that Kottke was unable to lift more than10lbs, unable to squat, and unable to stand for long periods of time. (P. Ex. 41). CNP Simons concluded that Kottke could still perform the essential functions of her job if she was allowed intermittent periods of sitting. (P. Ex. 41)

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

The ADA prohibits employers from "discriminat[ing] in the terms and conditions of a qualified individual's employment on the basis of a disability and requires that employers make reasonable accommodations for qualified individuals' disabilities." *Harris v. Allen Cty. Bd. of Commissioners*, 890 F.3d 680, 683 (7th Cir. 2018) (citing 42 U.S.C. § 12112(a), (b)(5)(A)).

I.  Failure to Accommodate Claim

The parties both move for summary judgment on the ADA failure to accommodate claim. A plaintiff bringing an ADA failure to accommodate claim must establish: (1) that she "is a qualified individual with a disability," (2) that "the employer was aware of h[er] disability," and (3) that "the employer failed to reasonably accommodate the disability." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015) (internal quotations omitted) (quoting *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013)). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.

§ 12111(8) (explaining further that "consideration shall be given to the employer's judgment as to what functions of a job are essential").

Kottke argues in support of her motion for summary judgment that there can be no question that she is a qualified individual protected by the ADA. Kottke contends that she could perform the essential functions of her job with a reasonable accommodation because her ADA paperwork indicates that she had such capabilities. While the ADA Paperwork prepared by CNP Simons is evidence that can be considered by the trier of fact, it is not dispositive evidence.[2] Kottke's own September 11 Letter provides contradictory evidence. PetSmart in its motion for summary judgment contends that the September 11 Letter conclusively shows that Kottke is not a qualified individual protected by the ADA. As with the ADA Paperwork, however, the September 11 Letter is not dispositive, although it is evidence that can be considered by the trier of fact.[3]

Kottke also contends that although her impairments prevented her from performing the essential functions of her job, she is a qualified individual because she could have done so with a

---

[2] Kottke cites to *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) in support of her argument that she is a qualified individual. (Kottke Mem. SJ at 10). In *Spurling*, however, the court did not address whether the plaintiff was a qualified individual under the ADA. The portion of *Spurling* cited by plaintiff relates to whether the plaintiff had shown that there was a reasonable accommodation available and whether the employer engaged in the interactive process. *Id.* at 1061-62. Kottke also cites *Gile v. United Airlines, Inc.*, 213 F.3d 365 (7th Cir. 2000). (Kottke Mem. SJ at 11). In *Gile*, the Court found that the employer had failed in its ADA obligations because it ultimately refused the plaintiff's requested accommodation and made no effort to find an alternative accommodation. *Id.* at 373-74. In the instant action, PetSmart never refused the requested accommodation. PetSmart contends that it was still evaluating the requested accommodation when it received the September 11 Letter and believed that Kottke was no longer seeking an accommodation. In addition, in *Gile* the court in finding that the defendant failed in the interactive process was entertaining whether the defendant was entitled to judgment as a matter of law. *Id.* The Court did not hold that the plaintiff was entitled to prevail as a matter of law based upon the failure by the employer in the interactive process.

[3] PetSmart also contends that Kottke failed to mention the failure to accommodate her disability when she testified before the National Labor Relations Board. Such evidence is likewise not dispositive, but can be presented to the trier of fact for consideration.

reasonable accommodation. The parties assert that the essential functions of the Fish Healthcare Associate position are: (1) removing dead fish from tanks, (2) feeding the fish, (3) cleaning the fish tanks, (4) siphoning water from fish tanks, (4) general housekeeping, and (5) general care for other aquatic animals. (Resp. Kottke SOF ¶ 15). Kottke contends that, consistent with the opinion in the ADA Paperwork, she could perform the essential functions of her position if she were allowed to sit intermittently. PetSmart dismisses such an accommodation as insufficient. PetSmart argues that due to the necessary tasks, the number of fish tanks, and multiple tiers of fish tanks, even with such an accommodation, Kottke could not perform her job.[4] PetSmart contends, for example, that Kottke's replacement, Driffin Vibar ("Vibar"), testified at his deposition that he was on his feet approximately 10 out of 12 hours during a shift. (Pet SAF ¶ 4). Vibar is not a medical expert or expert as to ADA accommodations. While his experience is relevant and can be considered by the trier of fact, such evidence does not show conclusively that Kottke would have been unable to satisfactorily complete the job while sitting intermittently. PetSmart also submits photos of the tiers of tanks in the Distribution Center, which invites the court to engage in a factual analysis of the evidence that is best left for the trier of fact. This court cannot weigh evidence or resolve factual disputes at the summary judgment stage. *See Stragapede v. City of Evanston, Illinois*, 865 F.3d 861, 866 (7th Cir. 2017) (stating that in regard to whether the plaintiff was a qualified individual, it was "the jury's job to weigh conflicting evidence, make credibility determinations, and evaluate the trial record based on its collective common sense").

---

[4] PetSmart also argues in a conclusory fashion that it is not required to modify, reduce or reallocate the essential functions of a job to accommodate an employee, but PetSmart has not pointed to sufficient evidence that conclusively shows that such actions would have been required.

5

Kottke also argues that PetSmart failed to engage in the required interactive process with Kottke. *See Brown v. Milwaukee Bd. of Sch. Directors*, 855 F.3d 818, 821 (7th Cir. 2017) (stating that "[i]dentifying reasonable accommodations for a disabled employee requires both employer and employee to engage in a flexible, interactive process"). PetSmart argues that it did engage in the interactive process with Kottke until she submitted the September 11 Letter to PetSmart. PetSmart contends that it was entitled to rely on the September 11 Letter and summarily terminate Kottke's employment because Kottke did not make any new request for an accommodation when presenting the September 11 Letter to PetSmart. PetSmart contends that at that juncture it had only two choices: (1) terminate Kottke's employment, or (2) allow Kottke to remain on ADA leave indefinitely. (Pet Mem. SJ at 10). That is not entirely correct. As Kottke points out, PetSmart could have contacted Kottke to discuss the impact of the September 11 Letter on Kottke's ADA Paperwork and whether she was still seeking an accommodation. The September 11 Letter was written by a different medical professional than the one that submitted the ADA Paperwork. The September 11 Letter did not reference the ADA Paperwork or specifically state that it was no longer valid. (P. Ex. 45). Nor did the September 11 Letter specifically reference the ADA or independently state that no reasonable accommodation was available for Kottke. (P. Ex. 45). The September 11 Letter consisted of nothing more than three conclusory sentences and it was incumbent upon PetSmart to at least reach out to Kottke and seek clarification as to her status and whether she was still asking for a certain accommodation. (P. Ex. 45). PetSmart's layperson understanding of the medical information contained in the September 11 Letter and the meaning of the letter was not sufficient to justify the summary termination of the interactive process. PetSmart thus failed to complete its obligation to engage in the interactive process with Kottke.

PetSmart's failure to complete the interactive process, however, does not mean that Kottke is entitled to prevail as a matter of law. The failure by an employer "to engage in the interactive process required by the ADA is not an independent basis for liability under the statute, and that failure is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). In the instant action, Kottke maintains in her filings that, consistent with her ADA Paperwork, she was able to perform her job if allowed to sit intermittently.[5] The potential accommodation has thus been identified and a Kottke does not suggest any other accommodation even at this late juncture. It remains for the trier of fact to determine whether with such an accommodation Kottke was able to perform the essential functions of the position at the time of her termination. Based on the above, Kottke's motion for summary judgment on the failure to accommodate claim and PetSmart's motion for summary judgment on the failure to accommodate claim are denied.

II. Disability Discrimination Claim

---

[5] Kottke appears to indicate that PetSmart should still be liable even if the intermittent standing accommodation is proved to be inadequate. Kottke argues in support of her motion for summary judgment that if PetSmart believed that the intermittent standing requirement will not be a solution, it was incumbent on PetSmart to work to find other potential accommodation and that PetSmart cannot avoid liability at this juncture. Under such a theory, PetSmart would be unable to defend itself in this case in which Kottke is seeking reinstatement, and Kottke's ADA protections would provide her with a type of indefinite medical leave for a position that she could not perform, which the Seventh Circuit has not condoned. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) (stating that "[t]he ADA is an antidiscrimination statute, not a medical-leave entitlement"). As the Seventh Circuit stated in *Spurling*, which is cited by Kottke, that even if the employer failed in its role in the interactive process, the plaintiff bears the burden of "show[ing] that a reasonable accommodation could be made that would enable her to carry out the essential functions of her job." 739 F.3d at 1062. Other than the intermittent standing accommodation, Kottke has not pointed to any other accommodation that she would have proposed if the interactive process had continued. Kottke asserts that the intermittent standing accommodation was a reasonable accommodation, stating that "[t]he undisputed material facts show, and a reasonable factfinder could easily conclude, that 'intermittent periods of sitting' would have enabled Cynthia to perform all the essential functions of her job." (Kottke Reply at 11). Kottke argues that PetSmart "has not identified a single essential job function that Cynthia would not have been able to do with her requested accommodation." (Kottke Reply at 14). No other potential accommodation has been placed at issue by Kottke in this case.

The parties both move for summary judgment on the ADA disability discrimination claim. For a disability discrimination claim, a plaintiff must establish: (1) that she "is disabled," (2) that she "is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation," and (3) that "the adverse job action was caused by h[er] disability." *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 503–04 (7th Cir. 2017) (internal quotations omitted) (quoting *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016)). As explained above in regard to the failure to accommodate claim, whether Kottke is a qualified individual able to perform the essential functions of her job with a reasonable accommodation involves genuinely disputed facts that can only be resolved by the trier of fact. Kottke's disability discrimination claim, however, fails as a matter of law because she has not pointed to sufficient evidence that indicates her employment was terminated because of her disability. Kottke argues that PetSmart admitted that it terminated her employment based on the September 11 Letter and that the September 11 Letter informed PetSmart that she had a disability. Kottke contends that PetSmart thus admits to terminating her employment because of her disability. It is true that Kottke's termination is connected to her disability and that PetSmart terminated her employment in part because Kottke was disabled. However, the fact that Kottke is disabled does not automatically mean that she is entitled to work at PetSmart. *Severson*, 872 F.3d at 479. PetSmart's given reason for terminating Kottke's employment is that the September 11 Letter informed PetSmart that Kottke was not a qualified individual with a disability and that she was not protected by the ADA.

Kottke argues that PetSmart was wrong to conclude that the September 11 Letter proved that she is not a qualified individual protected by the ADA. In order to establish a disability discrimination claim, however, Kottke must show more than that PetSmart was mistaken or

acted unwisely or unfairly. *See Monroe*, 871 F.3d at 505 (stating that "[i]n determining whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge" and that "[p]retext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action") (internal quotations omitted) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) and *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012)). Kottke must establish that PetSmart acted based on an animus against Kottke because of her disability or upon some unreasonable fear or stereotype relating to her disability.[6] *See Shell v. Burlington N. Santa Fe Ry. Co.*, 2018 WL 1156249, at *5 (N.D. Ill. 2018) (stating in case where employer feared that employee's disability would create a safety risk that it was "the sort of myth, fear, or stereotype which the ADA is meant to guard against"); *Curtis v. Costco Wholesale Corp.*, 2014 WL 4783051, at *6 (N.D. Ill. 2014) (indicating that "[t]he pretext inquiry for the ADA claim focuses on animus due to the plaintiff's disability"); *Herx v. Diocese of Ft. Wayne-S. Bend Inc.*, 48 F. Supp. 3d 1168, 1181–82 (N.D. Ind. 2014) (stating that "[u]nder no view of the summary judgment record could a reasonable trier of fact find the [defendant] acted due to a disability-based animus against her" disability). Under Kottke's own theory PetSmart made a mistake in its evaluation of the September 11 Letter and acted unfairly when it summarily terminated her before discussing the matter with her. Kottke contends that PetSmart substituted its own "unilateral judgment" for that of Kottke's medical providers. (Kottke Reply at 12). Kottke fails, however, to point to evidence showing that PetSmart's reason for her termination was a dishonest reason and a pretext or was connected to some unreasonable fear or

---

[6] Kottke alleges in her complaint that PetSmart's discrimination based on her disability was intentional. (Compl. ¶ 28).

9

stereotype. Kottke does not even advance such a theory in her filings. To the extent that Kottke argues that PetSmart should have continued to engage in the interactive process and given her an opportunity to discuss her job situation, Kottke can pursue such arguments in regard to her failure to accommodate claim which remains alive and well. Based on the above, Kottke's motion for summary judgment on the disability discrimination claim is denied and PetSmart's motion for summary judgment on the ADA discrimination claim is granted.

**IT IS THEREFORE ORDERED** that Kottke's motion for summary judgment [72] is denied, that PetSmart's motion for summary judgment on the ADA failure to accommodate claim [86] is denied, and that PetSmart's motion for summary judgment on the ADA disability discrimination claim [86] is granted.

Date: July 6, 2018

William T. Hart

United States District Judge